DON BARNES, Appellant, v. EASTERN IOWA RAILWAY COMPANY.

**Railroads:** LIMITATION OF INDEBTEDNESS: STATUTES. Code, section 1611, limiting the indebtedness of railways incurred in aid of their location, construction and equipment applies to the issuance of

bonds for that purpose, and is not affected by the provisions of section 2049 relating to the issuance of bonds to pay indebtedness and improve its property, as the latter section does not deal with bonds issued to defray the cost of the original construction.

**Same.** Section 1061 of the Code of 1873 as amended by the Twentieth
2 General Assembly enlarged the power of railway companies to issue bonds or securities for the location, construction and equipment of the roads, and such corporations may now contract indebtedness for such purposes equal to two-thirds of their capital stock when the same is in excess of $24,000 per mile of road, and when the capital stock does not equal that sum they may incur indebtedness of $16,000 per mile.

*Appeal from Superior Court of Cedar Rapids.*—HON. C. B. ROBBINS, Judge.

FRIDAY, JANUARY, 19, 1912.

THE opinion states the case.—*Reversed.*

*Barnes & Chamberlain* for appellant.

*John A. Reed* for appellee.

SHERWIN, J.—The defendant is an Iowa corporation, organized for the purpose of building and operating a single-track, standard-gauge interurban railway thirty-two miles long. For the purpose of building said railway, the defendant proposes to contract an indebtedness in the sum of $700,000, evidenced by its bonds, which are to be secured by a trust deed on all of its corporate rights, franchises, and property. The plaintiff is a stockholder in said railway company, and brings this action to enjoin the defendant from incurring said indebtedness, alleging that its proposed action is illegal under section 1611 of the Code, which limits the indebtedness of said company to $16,000 per mile, and for the further reason, as alleged,

that the proposed indebtedness exceeds two-thirds of the amount of the capital stock of said defendant. The defendant demurred to the petition on the ground that the facts pleaded did not entitle the plaintiff to the relief demanded, or to any relief whatever. The demurrer was sustained, and, the plaintiff electing to stand upon his petition, judgment was entered dismissing same, and plaintiff appeals.

The determination of the question thus presented involves a consideration of sections 1611 and 2049 of the Code. The former section is in the chapter of the Code relating to corporations for pecuniary profit, and is as follows, so far as it is material here:

1. RAILROADS: limitation of indebtedness: statutes.

Sec.1611. Limit of Indebtedness. Such articles must fix the highest amount of indebtedness or liability to which the corporation is at any one time to be subject, which in no case, except risks of insurance companies and liabilities of banks not in excess of their available assets, not including their capital, shall exceed two-thirds of its capital stock. But the provisions of this section shall not apply to the bonds or other railway or street railway securities, issued or guaranteed by railway or street railway companies of the state, in aid of the location, construction and equipment of railways, to an amount not exceeding sixteen thousand dollars per mile of single track, standard gauge, or eight thousand dollars per mile of single track, narrow gauge, lines of road for each mile of railway or street railway actually constructed and equipped.

Section 2049 is in the chapter relating to railways, and is in the following language:

Bonds Secured by Mortgage. Any railway corporation organized under the laws of the state may mortgage its property and franchises, in whole or in part, to secure bonds issued by it to pay or refund its indebtedness, to improve or develop its property, or for the purpose of effecting the object of its incorporation, to be issued in such amounts, run for such length of time, be payable

within or without this state, and bear such rate of interest, not to exceed the legal rate in the state at the time of issue, as the company issuing the same shall determine.

For the purpose of ascertaining the scope and intent of these two sections, it is necessary to look at their history. The Code of 1851 authorized the organization of private corporations, and fixed the limit of the indebtedness of such corporations to two-thirds of their capital stock. Title 10, chapter 43. This enactment was carried into the Code of 1860 as section 1153, which provided that "corporations for the construction of any work of internal improvement" must file articles of incorporation, and such articles must fix the highest amount of indebtedness or liability, "which must in no case, except in that of the risks of insurance companies, exceed two-thirds of its capital stock." Section 1058 of the Code of 1873 authorized corporations for the transaction of any lawful business, including the establishment of ferries, the construction of canals, railways, bridges, or other works of internal improvement; and section 1061 limited the amount of indebtedness of such corporations, except insurance companies, to two-thirds of the capital stock. It will be observed that the Code of 1860 made such limitation apply to all corporations engaged in any work of internal improvement, which would clearly include the construction of railways, and that section 1058 of the Code of 1873 expressly applied the limitation to corporations organized for the purpose of constructing railways. So there can be no question as to the intent to apply the limitation to corporations engaged in the construction of railways even prior to the enactment of section 1611 of the Code of 1897 which was originally enacted by the Twentieth General Assembly (chapter 22) and became effective April 2, 1884. Section 1611 expressly provides that railway or street railway companies shall not issue bonds or other securities in aid of the location, construction, and equipment of railways or street

railways to exceed $16,000 per mile.  The appellee practically concedes that, if this section is to control, the judgment of the trial court is wrong.

But it is contended that section 2049 expressly authorizes an unlimited issue of bonds, and that the two sections are so antagonistic that one or the other must fall, and that section 2049, being the later enactment, should stand as the legislative will.  We are unable to agree with the appellee's contention.  The limitation of section 1611 applies only to bonds issued for the location, construction, and equipment of the road, and the word "equipment," as here used, evidently refers to the original equipment.  Section 2049 authorizes the issuance of bonds to pay or refund indebtedness to improve or develop property, or for the purpose of effecting the object of incorporation.  This section, in our judgment, does not attempt to deal specifically with indebtedness incurred in the original construction of the road, or to open the door for an issue of bonds in excess of $16,000 per mile for the location, construction, and original equipment of the road.  It provides for an issue of bonds for a refund of indebtedness and the payment of debts, and for developing and improving its property.  It is within the knowledge of all men that, after the original construction of railroads, large indebtedness is often incurred in the operation of the road and in necessary repairs and improvements, and this, with other authorized indebtedness, is evidently what the law intended to provide for.  Thus, if bonds are issued to the limit of $16,000 per mile for construction and original equipment, and the operation and necessary development and improvement of the road thereafter occasions additional indebtedness, the entire indebtedness, or any part thereof, may be paid or refunded by secured bonds.  This construction of section 2049 is in harmony with section 1611 and makes both sections effective.  The sentence, "or for the purpose of effecting the object of its

incorporation," does not, in our judgment, broaden the power and scope of the section. Considered with what precedes it, it relates only to the things necessary to be done to carry on the business of the corporation, and has no reference to the original construction of the road.

We are of the opinion that the demurrer should have been overruled, and the judgment is, therefore—*Reversed.*

## SUPPLEMENTAL OPINION.

### WEDNESDAY, JUNE 26, 1912.

SHERWIN, J.—On the original submission the appellee took the position that section 1611 of the Code fixed the maximum amount of bonds that might be issued in aid of the location, construction, and equipment of railways at $16,000 per mile, and because thereof it was contended that sections 1611 and 2049 were in conflict and could not both be upheld. And in our discussion in the original opinion of the question thus presented our statement as to the limitation imposed by section 1611 was based on the appellee's concession, and we did not at the time deem it necessary to further discuss that phase of the case. The appellee in a petition for a rehearing asks us to further consider section 1611 and to determine whether it limits the issue of bonds or other securities in aid of the location, construction, and equipment of railways to $16,000 per mile, notwithstanding the fact that said sum of $16,000 per mile may not equal two-thirds of the capital stock of such corporation; appellee's contention now being that under section 1611 a railway corporation may incur an indebtedness in aid of its location, construction, and equipment equal to two-thirds of its capital stock when said capital stock is in excess of $24,000 per mile and to the amount of $16,000 per mile, although its capital stock may be less than $24,000 per mile.

Under the provisions of the law in force up to the enactment of chapter 22 of the acts of the Twentieth General Assembly, the amount of indebtedness of railway corporations was nowhere limited to a particular sum per mile; but the indebtedness was in all instances limited to an amount not in excess of two-thirds of its capital stock. Chapter 22 of the Acts of the Twentieth General Assembly added to section 1061 of the Code of 1873 the following: "Provided that the provisions of this section shall not apply to the bonds or other railway securities to be hereafter issued or guaranteed by railway companies of this state, in aid of the location, construction and equipment of railways to the amount of not exceeding sixteen thousand dollars per mile of single track, standard gauge, or eight thousand dollars per mile of single track, narrow gauge, lines of road for each mile of railway actually constructed and equipped." And the question is whether this chapter was intended as a restriction or as an enlargement of the power theretofore existing in such corporation to contract indebtedness. Before the enactment of chapter 22, a railway corporation had the power to create an indebtedness not in excess of two-thirds of its capital stock, and hence, if its capital stock exceeded $24,000 per mile of its road, it could contract an indebtedness in excess of $16,000 per mile. But if its capital stock was less than $24,000 per mile, it could not contract an indebtedness equal to $16,000 per mile. Chapter 22 says that the limitation of indebtedness to a sum not in excess of two-thirds of the capital stock shall not apply to bonds or securities issued for the purpose therein named, to the amount of not exceeding $16,000 per mile of single track, standard gauge, or $8,000 per mile of single track, narrow gauge, road. We think the purpose of the statute was to permit railways which, under the law as it formerly existed, did not have the power to create an indebtedness of $16,000 per mile to create that amount of indebtedness

2. SAME.

per mile, even though its capital stock did not equal $24,000 per mile of road, and that it was not intended as a limitation to $16,000 per mile when two-thirds of the capital stock would warrant a larger indebtedness. In other words, we are of the opinion that the act in question enlarged the power of railway corporations in the matter of incurring indebtedness for the purposes named, instead of limiting such power, and that such corporations may contract an indebtedness equal to two-thirds of their capital stock when such capital stock is in excess of $24,000 per mile of road, and that they may incur an indebtedness of $16,000 per mile of road when the capital stock does not equal $24,000 per mile. *Beach & Weld v. Wakefield*, 107 Iowa, 567, in a measure supports the conclusion we reach, although the precise question was not there discussed.

The amount of indebtedness that the appellee proposed to incur was in excess of two-thirds of its capital stock, which is over $24,000 per mile, and under no theory of the case can the judgment of the trial court be sustained.

The petition for a rehearing is therefore *overruled*.